[Cite as *State v. Willis*, 2012-Ohio-2623.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97077**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## COURTNEY WILLIS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548457

**BEFORE:** S. Gallagher, J., Boyle, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 14, 2012

**ATTORNEY FOR APPELLANT**

Reuben J. Sheperd
11510 Buckeye Road
Cleveland, OH   44104


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Sherrie S. Royster
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant Courtney Willis appeals his conviction for burglary and petty theft entered after a jury trial. For the following reasons, we affirm.

{¶2} On March 20, 2011, a neighbor awoke to the sound of breaking glass emanating from the neighboring two-family home. Upon inspection, the neighbor saw someone, later identified as Willis, standing behind the garage. After the neighbor called the police, the intruder broke more glass but quickly departed before the police could arrive. The landlord boarded over the broken window.

{¶3} The next day, March 21, the neighbor again saw the same intruder exiting the same house through a broken bedroom window. The victim, a tenant in the upstairs unit of the two-family home, awoke to sounds of someone "fumbling" with the pipes in the basement of the property. Suspecting an intruder, the victim called the police. By the time the police officers responded, the officers and the victim heard the sounds of someone stepping on broken glass from the back window of the downstairs unit. They all caught a glimpse of a man, later identified as Willis, jumping over the backyard fence. The victim inspected the basement and saw several water pipes ripped from the wall and stacked on the floor. The victim lost water services for about one and one-half months because of the attempted theft of the pipes. The victim was responsible for securing the downstairs unit and had a key to all the doors of the two-family home because the downstairs tenant was away for several months caring for a sick relative.

{¶4} Two of the initial responding police officers, Officers Dominique King and Dshaun Thompson, began searching for the fleeing suspect in some nearby abandoned homes. The officers spotted a red car with three occupants pulling out of a driveway. As both officers approached the car, they noticed Willis crouching in the back seat and acting suspicious. The officers stopped the car and found that Willis had some ladies' watches and jewelry in his pocket. One of the watches was later identified by the victim as belonging to the downstairs tenant. The watches and other jewelry were not logged into evidence, and Willis claims the items were lost. The police report indicated the watches and jewelry were returned to the victim. The victim did not receive those items.

{¶5} Officer Thompson admitted that when Willis was initially detained, he was not wearing the same clothes as described by the witnesses. While Officer King detained Willis in the driveway, Officer Thompson entered the house nearest to where Willis was discovered. Willis told Officer King that he stole the watches and jewelry from his nephew's mother. Officer Thompson stated that he spoke with a female resident of the house who claimed that Willis was wearing clothing that matched the witnesses' description when he entered the house, that Willis was there for only 10 to 15 minutes, and that she did not know about any watches. Officer Thompson was unable to find any other clothing.

{¶6} The officers ceased the search for the intruder. Willis was placed in an identification lineup where the victim and the neighbor identified Willis as the man seen

breaking the window and fleeing the scene.  The victim also identified one of the watches found on Willis as belonging to the downstairs tenant.

{¶7} Willis was charged with one count of burglary in violation of R.C. 2911.12(A)(1), with notice of prior conviction and repeat violent offender specifications attached, one count of petty theft in violation of R.C. 2913.02(A)(1) for the theft of watches or services, and one count of criminal damaging in violation of R.C. 2909.06(A)(1) for the broken window.   At the close of the state's case, Willis moved for a Crim.R. 29 acquittal on all three counts.   The trial court denied the motion as to the first two counts but granted the motion as to the   criminal damaging count.   The jury returned a guilty verdict on the burglary and theft charges.

{¶8} Willis timely appealed, raising four assignments of error.   In his first assignment of error, Willis argues that his trial counsel was ineffective for failing to object to some of Officer King's and Officer Thompson's testimony.   In his second, third, and fourth assignments of error, Willis claims the evidence supporting the petty theft and burglary counts was insufficient to prove all the elements of the charges or was against the manifest weight of the evidence.   We will address each argument in turn.

### Ineffective Assistance of Counsel

{¶9} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 310, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v.*

*Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 2065. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905. The defendant has the burden of proving his counsel rendered ineffective assistance. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

{¶10} Willis challenges his trial counsel's failure to object to Officer King's and Officer Thompson's testimony regarding the chase and apprehension of Willis. Willis claims that Officer King's testimony regarding the conversations between Officer Thompson and the female resident of the house was hearsay. Willis also argues that Officer King's and Officer Thompson's testimony about the perpetrator's clothing and direction of escape, as broadcasted over the radio to the search team, was improperly admitted. Willis assumes, without analysis, that the statements were hearsay.

{¶11} Hearsay is "a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Out-of-court statements offered for reasons other than the truth are not hearsay. *State v. Freeman*, 8th Dist. No. 85137, 2005-Ohio-3480, ¶ 40, citing *State v. Lewis*, 22 Ohio St.2d 125, 132-133, 258 N.E.2d 445 (1970). Generally, statements offered to explain a police officer's underlying reasons for conduct while investigating a crime are not hearsay. *Freeman,* citing *State v. Price*, 80 Ohio App.3d 108, 110, 608 N.E.2d 1088 (9th Dist.1992); *State v. Thomas*, 61 Ohio St.2d 223, 232, 400

N.E.2d 401 (1980). "The conduct to be explained should be relevant, equivocal and contemporaneous with the statements. * * * Additionally, such statements must meet the standard of Evid.R. 403(A)." *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist.1987).

{¶12} For example, when an officer relates out-of-court statements that establish the elements of the crime charged, the statements may exceed that which is needed to establish a foundation for the officer's subsequent conduct. *State v. Gresh,* 5th Dist. No. 09-CAA-012-0102, 2010-Ohio-5814, ¶ 31. The officer in *Gresh* testified to the victim's statements that the defendant inappropriately touched her. The officer's trial testimony could not have been used to explain the officer's later conduct, but rather, the statements established the elements of the crime for which the defendant was charged. *Id.* The identity of the perpetrator was not an issue, and the victim's testimony related only to the elements of the charges. *See also Blevins* at 149-150 (officer's testimony relating out-of-court statements identifying the defendant as the source of the drugs on the trafficking charges clearly established an element of the offense rather than explaining reasons for the officer's conduct.)

{¶13} On the other end of the spectrum, out-of-court statements related by an officer during trial testimony can be admissible even when they identify the codefendant through anonymous tips. *State v. Stadmire*, 8th Dist. No. 81188, 2003-Ohio-873, ¶ 38-42. This court found that the anonymous tips guided the officers in apprehending and arresting the defendant through his ties with the codefendant. *Id.* Although the

*Stadmire* court did not rely on *Blevins*, the admission of the tips were both relevant and contemporaneous to explain the officer's pursuit of the defendant as a suspect.

{¶14} In this case, the statements of Officers King and Thompson did not demonstrate elements of the burglary or theft offenses and, therefore, were not hearsay. The testimony was not offered for the truth of the matter asserted, rather, it was elicited in order to explain the officers' conduct in finding and apprehending Willis. Officers King and Thompson initially detained Willis as a suspect because of his possession of women's watches. At the time, they were conducting an ongoing search for the perpetrator of the burglary. According to Officer King, Willis admitted the watches were stolen, but from somewhere other than the victim's home. At the point that Willis was initially detained, the officers had no way of knowing whether the manhunt had ended. It was under these circumstances that out-of-court statements were relevant to the officers' subsequent conduct of ceasing the search and identifying Willis as the suspect in the burglary. The testimony was properly admitted to explain the officers' conduct and therefore was not hearsay.[1] Willis's trial counsel was not deficient, and Willis's first assignment of error is overruled.

### Sufficiency of the Evidence

---

[1]We note that our disposition of the hearsay issue does not imply any determination pursuant to *Crawford*. *See Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (testimonial out-of-court statements are inadmissible pursuant to the Confrontation Clause in the U.S. Constitution). Willis did not present an issue of whether the statements were testimonial or nontestimonial in nature and based his entire argument on the ineffectiveness of his trial counsel for failing to object to the hearsay.

{¶15} When an appellate court reviews a claim of insufficient evidence, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶16} R.C. 2911.12(A)(1), the burglary statute, provides as follows: "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * when another person * * * is present, with purpose to commit * * * any criminal offense." Willis's sole claim regarding the burglary conviction is that the state failed to prove the theft charge, the predicate offense to the burglary charge. Willis's argument is misplaced.

{¶17} In order to establish the burglary, the state need not prove a theft actually occurred. The state needed to establish that Willis trespassed on the property with the purpose to commit a theft. The neighbor saw Willis breaking the downstairs window the day before she saw him exiting another broken window. The victim and the neighbor both identified Willis as the man fleeing the scene once he was discovered. The victim established that the water pipes were ripped from the wall and that at least one watch was stolen from the downstairs property. The jury could infer that Willis

trespassed on the property with the purpose of stealing the watch or the pipes he ripped from the wall.

{¶18} Further, the jury was justified in convicting Willis based on the inference that any authorization to be in the home was exceeded when Willis stole the watch and ripped the water pipes from the wall, causing a disruption in the victim's water services. *See State v. Mitchell*, 8th Dist. No. 94287, 2010-Ohio-5775, ¶ 14 (even assuming a lawful entry, for the purposes of a burglary conviction, the privilege to remain automatically terminates once the defendant assaults the resident). The victim testified to having control over both units, which gave her exclusive control over the property. Even without testimony demonstrating the lack of permission to be present on the property, Willis would have exceeded any permission upon the attempt or commission of the theft. The jury, therefore, could reasonably conclude that all the elements of burglary were proved beyond a reasonable doubt regardless of the disposition of the theft charge.

{¶19} Willis next argues that the jury could have considered the theft charge only as it related to the theft of water services. After the state presented its case regarding the theft count, the trial court denied Willis's Crim.R. 29 motion for acquittal, specifically stating that the victim had an interest in and was deprived of water services. Willis's reliance on the trial court's statement is misplaced.

{¶20} R.C. 2913.02(A)(1), the theft statute, provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * (1) [w]ithout the consent of the owner or

person authorized to give consent." "Owner" is defined as "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." R.C. 2913.01(D). "'The important question is not whether the person from whom the property is stolen was the actual owner, but rather whether the defendant had any * * * right to possession.'" *State v. Jones*, 8th Dist. No. 92921, 2010-Ohio-902, ¶ 12, quoting *State v. Rhodes*, 2 Ohio St.3d 74, 76, 442 N.E.2d 1299 (1982). Thus, in order to establish a theft in this case, the state needed to establish that Willis deprived the victim of the property or services without her consent. The state argues that the property in this case refers to the watches found in Willis's pocket.

{¶21} While the trial court did mention the water services as a basis to deny the motion for acquittal, the trial court denied Willis's motion for acquittal on that count in its entirety. More important to this discussion, when the trial court instructed the jury on the theft charge, the trial court stated:

> before you can find [Willis] guilty you must find, beyond a reasonable doubt, that on or about March 21st of 2011, * * * [Willis] did, with the purpose to deprive the owner, [the victim], of watches or services, [and] knowingly obtained or exerted control over either the property or services without the consent of the owner or person authorized to give consent.

The jury, therefore, could base its guilty verdict on the theft of the watches or the services.

{¶22} There was sufficient evidence of the theft of watches to sustain Willis's conviction for theft. The police officers testified to removing the watches from Willis,

and the victim identified at least one of the watches as one belonging to the downstairs tenant. The victim was in control of the downstairs unit at the time the theft occurred and responsible for watching over the apartment, and its contents, while the downstairs tenant was away. The victim had a key to the unit for that purpose and had knowledge of the property inside the downstairs unit. In short, the victim was an "owner," as defined by R.C. 2913.01(D), because she had an interest in the property, albeit a temporary interest. *See State v. Shoemaker*, 96 Ohio St. 570, 117 N.E. 958 (1917) ("The gist of the offense was not the particular ownership of the property, but the 'wrongful' taking. If the taking was 'wrongful,' it did not matter who owned the property in question."); *State v. Thomas*, 8th Dist. No. 87666, 2006-Ohio-6588 (reaffirming the ownership principle set forth in *Shoemaker*).

{¶23} Further, the fact that the watches were never logged into evidence and were apparently lost, while disconcerting, is not dispositive of the theft charge. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). Willis has not alleged bad faith, much less demonstrated it. The jury, therefore, could reasonably conclude that all the elements of a theft were proven beyond a reasonable doubt. Willis's second and third assignments of error are overruled.

**Manifest Weight of the Evidence**

**{¶24}** Finally, in reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81. Under this de novo review, we examine the record, weigh the evidence and all reasonable inferences therein, and "determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

**{¶25}** Willis argues that the neighbor's testimony is incredible given her "checkered history" of drug abuse and the fact that Willis was wearing clothes in the lineup that were different from the description of the witnesses and the initial responding officers. Willis's arguments are without merit.

**{¶26}** The neighbor testified to her previous drug convictions, but also testified that she was sober during the time she witnessed Willis breaking into the next-door home. Nothing demonstrated an inability to clearly see Willis's face as the neighbor claimed on both of the occasions she saw Willis around the broken window. Further, the fact that Willis was wearing different clothes does not render either identification suspect. Both the victim and the neighbor identified Willis as the perpetrator, and both also testified that they could see his face as he fled the scene. Finally, the police discovered Willis with the watch identified as belonging to the downstairs tenant. In short, the jury did not lose its way and create a manifest miscarriage of justice. There was competent, credible

evidence supporting the convictions for theft and burglary, and Willis's fourth assignment of error is overruled.

**{¶27}** Willis's conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION


EILEEN A. GALLAGHER, J., DISSENTING:

**{¶28}** I respectfully dissent from the majority's opinion.